IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

MACEL JUERGENS AND
DESIGNS BY MACEL                                                    PLAINTIFFS

V.                                              CIVIL ACTION NO. 3:08CV007-SAA

WILLIAM L. WATT                                                      DEFENDANT

## ORDER

The court has before it motions by plaintiffs Macel Juergens and Designs by Macel [hereafter collectively "Juergens"] Motion to Amend to Conform to the Evidence [Docket 19] and defendant William L. Watt's Motion for Summary Judgment [Docket 25]. The court has considered the motions, briefs, responses, exhibits and the record as a whole and holds that the motion to amend should be denied and the motion for summary judgment granted in part and denied in part.

FACTUAL SUMMARY

Juergens asserts claims of copyright infringement, breach of contract and abuse of process against Watt. The allegation in her First Amended Complaint are somewhat confusing. She first alleged that Watt had "purloined" and was using without permission a set of plans for three condominiums upon which Macel Juergens had obtained a certificate of copyright. However, she further alleged that Macel Juergens, as Designs by Macel, had actually entered into a contract with Watt under which Juergens was to draft the plans which were to be used for a building to be constructed by Watt in Oxford, Mississippi, but that Watt had failed to pay for the plans in

1

violation of the contract. The facts before the court establish that Juergens did draft the plans and delivered them to Watt on March 16, 2007. By deposition testimony Juergens admits that she delivered multiple copies to Watt for the purpose of having copies for use by the contractor, the electrical contractor, mechanical contractor, plumbing contractor and other subcontractors in the construction of the building. Docket 25-4, pp. 5-9. Juergens also admits that, at the time of delivery of the plans, she placed no restrictions on their use by Watt or the contractor, J.O Morris, and that there was no registered copyright for the plans. *Id.* Instead, Juergens had marked "copyright pending" on the plans – "Pending me getting it in the mail and getting it to the copyright office." *Id* at p.9. Plaintiff later obtained a certificate of registration of the plans in the name of Macel A. Juergens on March 27, 2007.

The First Amended Complaint claims that under the contract Juergens was to be paid $75.00 per hour for Macel Juergens's drafting duties, for a total amount of over $21,310.00. Watt has admitted the existence of the contract but claims that Juergens was to be paid a flat fee of $4,000.00 for each of the three condominiums, totaling $12,000.00, plus out-of-pocket expenses.

When Watt did not pay her bill, Juergens instituted debt collection processes in the form of letters and, ultimately, a letter from her attorney in July 2007 seeking over $21,000.00 dollars from Watt and threatening to file a lawsuit if that amount was not paid. Rather than paying, Watt filed a complaint against Macel Juergens in the Chancery Court of Lafayette County, Mississippi in October 2007, claiming that he had a verbal contract with Juergens to perform draftsman duties, that Juergens breached the terms of the contract by attempting to collect $21,310.00 from him, and that in attempting to collect a "false debt," Juergens negligently and intentionally inflicted emotional distress upon him. Docket 25-3, pp. 6-13. Juergens filed an answer to the

Chancery Court case, in which she admitted the existence of a verbal contract between the parties, and a counterclaim against Watt for abuse of process; she demanded payment of $21,310.00, plus court costs, attorneys fees and punitive damages. Docket 24-4, pp. 3-4.

Macel Juergens and Designs by Macel filed this case in January 2008, alleging in the original complaint approximately 130 claims of copyright infringement and seeking statutory damages for each claimed incident, as well as reasonable costs and expenses. Docket 1. p.3. Juergens claimed that Watt was in the process of building a house "based on the copyrighted plans of plaintiffs which he obtained without permission of the copyright holder after a hearing by the Oxford Historic Preservation Committee." Docket 1, p. 1. Before Watt answered Juergens filed a First Amended Complaint, adding as supplemental state law claims the same claims made in the state court action, and seeking additional damages in the amount of $21,310.00 plus costs, fees and punitive damages. Docket 5. On February 9, 2009 – almost a year later and without obtaining leave of court or agreement by Watt to do so – Juergens filed a red-lined, edited version of the First Amended Complaint entitled "~~FIRST~~ SECOND AMENDED COMPLAINT." Docket 18. The purported Second Amended Complaint edited specific facts of the First Amended Complaint. For example:

> Defendant Watt is currently building a house based on the copyrighted plans of plaintiffs which he obtained without permission of the copyright holder after a hearing by the Oxford Historic Preservation Committee.

was changed to read as follows:

> Defendant Watt is currently building a house based on the copyrighted plans of plaintiffs which ~~he obtained without permission of the copyright holder after a hearing by the Oxford Historic Preservation Committee.~~ Plaintiff delivered to Defendant clearly marked as "copyright pending" to indicate that defendant had no right to use them without paying for them.

3

Docket 18, p.1.  The Second Amended Complaint also, via strikeout and retyping above or below the strikeout, changed the number of copyright infringement claims to 200 and struck the allegation that the parties had agreed to a rate of $75.00 under the contract, to allege instead that Juergens had quoted Watt a rate of $75.00, which Watt "was thought to accept," and that, consequently,  Juergens was owed $21,300.00 "in quantum meruit."  Docket 18, p.5.  Finally, plaintiff changed the demand for damages for the alleged copyright violation to $30,000.00, plus statutory damages, costs, reasonable attorneys fees and on the new proposed state law claim, $21,310.00 in quantum meruit.  *Id.*

Later on the same date Juergens filed her motion to amend to conform to the evidence. Her stated reason for requiring leave to amend was that plaintiffs' counsel had only been made aware, via testimony at depositions on January 31, 2009, of misstatements of fact in the First Amended Complaint which were errors of counsel and not the fault of the plaintiff.  According to the motion, this revelation necessitated a change in plaintiff's claim from one of breach of contract to one in quantum meruit or unjust enrichment.  Docket 19.  Watt has objected to the Second Amended Complaint on grounds that it is untimely, prejudicial, and an attempt to escape a clear admission by Juergens that her claims are barred under the Copyright Act.  Docket 22.

On February 27, 2009, Juergens filed a reply to Watt's response and attached a proposed Third Amended Complaint deleting all supplemental state law claims.  Docket 23.  Watt responded [technically a sur-reply not allowed under the rules, but obviously prompted by the latest proposed change in claims] to this proposed Third Amended Complaint on March 3, 2009, reiterating his previous objections to the proposed Second Amended Complaint as equally applicable to the proposed Third Amended Complaint.  Docket 27.  On March 11, 2009 Juergens

filed a reply [technically, a sur-sur-reply(?), and certainly not allowed under the rules] to Watt's response [sur-reply] regarding the Third Amended Complaint. Docket 28. Quoting Fed. R. Civ. P. 15(b)(2), plaintiff argued that she is entitled to move "at any time" to amend the pleadings to conform to the evidence.[1] Further she conceded that her proposed Third Amended Complaint constituted a "confession" to Watt's objections regarding her state law claims and that the state law claims should be withdrawn. Docket 28, p.2.

On March 3, 2009 Watt filed a motion for summary judgment as to plaintiff's claims alleged in the First Amended Complaint, arguing that Juergens, by her own admission through deposition testimony, is estopped from claiming copyright infringement. Docket 26. Juergens responded to the motion for summary judgment on March 23, 2009 [Docket 29], which Watt has moved to strike as untimely. Docket 32.

## LEGAL STANDARDS

Motion To Amend To Conform To The Evidence

Rule 15(a) of the Federal Rules of Civil Procedure addresses amendments of the pleadings before trial. Under Rule 15(a)(1), a plaintiff may amend the complaint once as a matter of course before being served with a responsive pleading, which Juergens actually did in this case. Rule 15(a)(2) allows further amendment "only with the opposing party's written consent or the court's leave" and directs courts that leave to amend under that subsection should be freely given "when justice so requires."

Even though Rule 15(b)(2) allows amendment of the pleadings when an issue "is tried by

---

[1] Fed. R. Civ. P. 15 (b)(2) states in part: "A party may move – at any time, even after judgement – to amend the pleading to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of that issue."

the parties' express or implied consent," subsection (b) of Rule 15 applies only to amendments during and after trial. This case has yet to come to trial, making subsection (b) inapplicable, but analysis of the plaintiffs' motion under the standard used to decide whether an opposing party has "acquiesed in" a claim or issue nevertheless is nevertheless instructive.

"A party who knowingly acquiesces in the introduction of evidence relating to issues that are beyond the pleadings is in no position to contest a motion to conform." Thus, consent generally is found when evidence is introduced without objection, or when the party opposing the motion to amend actually produced evidence bearing on the new issue." 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1493, at 24-28 (Civil 2d ed. 1990). To the contrary, when a party objects to the introduction of evidence on a new issue, the opposing party cannot later seek to amend the pleadings to conform to the evidence on the ground that the party impliedly consented to the trial of that issue. *Id.,* citing *Domar Ocean Transportation, Ltd. v. Independent Refining Co.*, 783 F.2d 1185, 1188 (5th Cir. 1986). It is essential that a party have fair notice that an issue is being raised. *Henry v. Coahoma County Bd. of Ed.* 246 F.Supp. 517, 519 (N.D.Miss. 1963). The right to amend to conform to the evidence is dependent upon the individual facts and circumstances of a case, but "pleadings will not be deemed amended to conform to the evidence because of a supposed 'implied consent' where the circumstances were such that the other party was not put on notice that a new issue was being raised." *Id.*

As the principal purpose of Rule 15(b) is judicial economy, if the parties consent to having a matter litigated – either expressly or by implication – and the evidence provides the court with sufficient guidance to resolve a matter, then amending the pleadings saves judicial

resources. 35A C.J.S. *Federal Civil Procedure* § 406 (2008), citing *Deere & Co. v. Johnson,* 271 F.3d 613 (5th Cir. 2001). Although amendments "should be freely granted" under Rule 15, the opposing party should likewise be given an opportunity to fully respond to the new theories presented in order to avoid prejudice. *Morgan and Culpepper, Inc. v. Occupational Safety and Health Review Commission,* 676 F.2d 1065, 1068 (5th Cir.1982). It stands to reason that if the opposing party has not been provided notice of the claims, or has objected to the trial of the non-pled factual issues and may be prejudiced by an amendment of the pleadings, then the amendment should not be allowed because it would not promote the interests of justice, but frustrate them.

In deciding whether to allow an amendment over a party's objection, the court should consider several factors including, but not limited to, (1) the interests of justice, (2) potential prejudice to the objecting party, and (3) whether the requesting party unduly delayed its request. *Moody v. FMC Corp*. 995 F.2d 63, 66 (5th 1993), citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). A party's delayed request to amend its pleadings may, alone, be sufficient to justify denial of a request to amend. *See Daves v. Payless Cashways, Inc.,* 661 F.2d 1022, 1025 (5th Cir.1981) ("Considering a motion on the eve of trial after discovery and after an unexplained nineteen-month delay, the trial court acted within its discretion in refusing to allow appellant to amend her complaint.").

In this case, Juergens relies on Rule 15(b) and the "liberal amendment policies of FRCP 15" to support the motion to amend the complaint. Docket 21, p. 1. Juergens claims that it was not until the depositions of defendant Watt and his family that she was convinced that Watt had never agreed to the terms of the contract which she offered him – drafting services for a fee of

$75.00 per hour for the drafting of plans for three condominiums – but mistakenly agreed to different terms, which explains Watt's claim that he agreed to pay Juergens $12,000.00 for plans for three condominiums. Consequently, says Juergens, her amended complaint simply conforms to the evidence as presented by Watt and should be allowed under the rules.

Alternatively, Juergens argues that because under Mississippi law there can be no contract without a "meeting of the minds," and because she and Watt did not mutually agree on compensation for services, there could be no contract. Finally, Juergens submits a third alternative: that the verbal contract between Juergens and Watt is void and unenforceable as it violates the "Statute of Frauds," codified at Miss. Code Ann. § 15-3-1(d) (2009), because the contract was not completed within fifteen months.

Watt's response to the motion to amend is threefold: (1) the second amended complaint was filed without leave of court and in violation of the Case Management Order, which required all amendments to be filed by August 24, 2008; (2) the motion is an attempt to circumvent the amendment deadlines as well as the "plaintiff's own claims and admissions that a contract existed between plaintiff and defendant, which constitutes an absolute bar to a claim for recovery under the Copyright Act" [Docket 22, p. 2]; and (3) granting the motion to amend would result in undue prejudice to Watt as discovery in this case is complete, all motions deadlines have passed, and Watt will likely incur additional litigation costs and expenses in defending the new claim for quantum meruit.

*Interests of Justice*

Although Juergens claims that allowing the proposed amendment is in the interests of justice in that it would allow her to pursue her claims under the facts and evidence as presented

8

by Watt in this case, allowing the amendment would actually benefit her interest more than the interests of justice. This case has been pending since January 2008. A related action involving the same facts has been pending in the Lafayette County Chancery Court since October 2007. Review of the pleadings, evidence and testimony in this case, shows that the parties have engaged in written discovery, taken several depositions and devoted significant time and resources to this litigation. To allow the plaintiff's proposed amendment would not simply allow the complaint "to conform to the evidence," but add a claim which is separate and district from the claims originally pled, against which Watt has not been heretofore required to mount a defense, and to which Watt has strenuously objected.

An amendment would likely create need for additional discovery, a fact acknowledged by Juergens in her original brief when she agreed to waive any objection previously made to reconvening her deposition. Docket 21, p. 2. Further, amendment would allow plaintiff, on the eve of trial and in the face of a summary judgment motion [to which she filed a late response] to explore new avenues to recover damages after her previously submitted claims were demonstrated to be weak, if valid at all. Likewise, amendment of the plaintiff's claims, at this late stage of litigation and over the defendant's objection, would require that the court continue the trial, extend deadlines and expend judicial resources that would not be used if this case proceeds to trial as currently set. Therefore the court declines to find that the amendment would be in the interests of justice.

*Prejudice to the Defendant*

Juergens argues that amendment of the pleadings to conform to the evidence presented in this case would not prejudice Watt as it would not change his burden to prove his defense.

9

Docket 28, p.2. However, Watt has not changed his theory of the case or developed a new perspective of the facts. At all times he has maintained his version of the facts and has defended plaintiff's claims based on those facts. It is Juergens who now accepts Watt's facts, for the most part, as controlling; at the very least she asserts that the facts as she believed them were not the same as what the defendant believed. Based on this circumstance, she seeks to amend her complaint "to conform to the evidence," ,*i.e.*, to change her claims based on her new understanding of the facts as presented by Watt. Although she argues that the amendment is simply to conform to the evidence, there is a distinct legal difference between a claim for breach of contract and a claim for quantum meruit: if a contract, either express or implied, is found to exist, then there can be no claim for quantum meruit. *Carter v Collins*, 151 Miss. 1, 117 So. 336 (Miss. 1928).

>The Mississippi Supreme Court has held:
>
>>Quantum meruit means literally 'as much as he deserves'. . . . [B]y way of example, . . . 'When a person employs another to do work for him, without any agreement as to his compensation, the law implies a promise from the employer to the workman that he will pay him for his services as much as he may deserve or merit.' I
>>
>>It is argued by appellants that when services are rendered under circumstances from which no reasonable person could assume that they were rendered as a gratuity, the law implies a promise to pay reasonable compensation therefor. [S]uch services must be rendered with knowledge and approval of the recipient, who either expresses no dissent or avails himself of the service rendered, or under 'such circumstances as authorize the party performing to entertain a reasonable expectation of payment for them by the party benefitted. However, the law will not imply a promise to pay the value of services rendered and accepted, where there is proof of a special agreement to pay therefor a particular amount or in a particular manner.'
>
>*Redd v. L & A Contracting Co.* 246 Miss. 548, 554-555, 151 So.2d 205, 207 - 208 (Miss.1963)

(citations omitted). In this case, both parties admitted a verbal contract for drafting and related services. *See* Docket 5, pp. 1, 3; Docket 22-2, pp.1 - 2, 8; Docket 22-3, pp.1, 3. Although the *terms* of the contract were contested, the *existence* of the contract was not. Until the filing of plaintiffs' motion to amend to conform to the evidence, there was no dispute of this point.

Under Mississippi law, "[w]here there is a contract, parties may not abandon same and resort to quantum meruit." *Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp.,* 743 So.2d 954, 970 (Miss.1999) (internal quotation omitted); *see also U.S. v. Federal Ins. Co.* 251 Fed.Appx. 269, 273, 2007 WL 2493666, 4 (5th Cir. 2007). The necessary elements for a contract are (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) legal capacity of the parties to make a contract, (5) mutual assent and (6) no legal prohibition precluding contract formation. *Rotenberry v. Hooker,* 864 So.2d 266, 270 (Miss.2003). In *Leach v. Tingle,* 586 So.2d 799, 802 (Miss.1991), the Mississippi Supreme Court stated that "a contract is unenforceable if the material terms are not sufficiently definite." Price is an essential term of a contract that must be stated with specificity, *id.* at 803, but the fact that the parties disagree as to price does not mean that there is no contract. As presently before the court, this is not a case where either party contends that no price was ever agreed upon. Rather, each party contends that its version of the price agreed upon in the oral contract is the correct one. Thus, the dispute presents a classic jury question.

Plaintiff's proposed amendment would permit her to contend that a mistake as to price means there was no contract. Williston on Contracts provides the following when it appears that there is a mistake as to price and perhaps the price is too good to be true:

> As a general rule, equitable relief will not be granted if only one party to a

11

> contract has made a mistake. However, a unilateral mistake may afford ground for rescission where there is a material mistake that is so palpable that the party not in error is put on notice of its existence. Thus, where a deal is too good to be true, it probably is. Where the mistake, on its face is so palpable as to place a person of reasonable intelligence on guard, there is no mutuality of assent between the parties and, consequently, there can be no contract.

27 Williston on Contracts § 70:117 (4th ed.). In this case, Juergens now claims that she sees that she and Watt did not come to a meeting of the minds as to the price, and therefore the contract is void. However, even if this were the case, the contract would actually not be void, but voidable. *Morris v. Liberty Mut. Ins. Co.* 659 F.Supp. 201, 204 -205 (N.D.Miss.,1987), citing Contracts Restatement 2d §153. The general rule in Mississippi is that equity will not grant relief from a mistake if that mistake is merely the result of inattention, personal negligence, or misconduct on the part of the party applying for relief. *Id.*

At this point, the facts establish without dispute that Watt contacted Juergens about drafting plans for three condominiums. Upon discussion, Juergens agreed to draft the plans. Juergens unequivocally testified that she agreed to perform these services for a price of $75.00 per hour. [Juergens Dep. at 6-7, Docket 25-4, pp. 13-14]. Watt, on the other hand, testified that Juergens agreed to draft the plans for $4,000.00 each, just as she had charged for the sample plans Juergens had shown Watt during their meeting, for a total of $12,000.00. [Watt Dep. at 11, Docket 21-16]. Juergens drafted the plans, conferred with Watt's building contractor, and ultimately delivered multiple sets of plans to Watt so that he could use them to build three condominiums. Juergens expected that the contractor and subcontractors would use the plans to build the condominiums and that she would be paid for her services. She subsequently instituted debt collection processes and filed the instant case. She cannot argue that the price that Watt

understood to be the contract price – $12, 000.00 – was "too good to be true" because that is exactly the price (multiplied by the number of condominiums Watt wanted) that Juergens had charged another client for the plans for a condominium which she showed to Watt as an example of her work.

From the inception of this action Watt has raised the existence of an implied license and contract as a complete defense to plaintiff's copyright claim. Allowing Juergens to change her claim at this stage – not just to permit her to abandon her breach of contract claim, but to permit her to contend that there *was never* a contract – would change the principal issues of the case rather than conform them to the evidence, and require Watt to review and revise his defense completely. Indeed, the evidence in the record at this point appears to establish that there *was* a contract, the terms of which must be decided by a jury. [2] The amendment would undoubtedly prejudice Watt in moving forward toward resolution of this case.

*Undue Delay*

This case was filed in January 2008. A related case had been filed in the Chancery Court of Lafayette County in October 2007. The discovery deadline was January 24, 2009. Trial of this case is set for June 8, 2009. Only now, at this late stage of litigation and just weeks before trial, does plaintiff dispute the existence of a contract based on the defendant's testimony,[3] the facts and allegations of which have not changed since the inception of this case. Watt served his core

---

[2]This is not to say that a jury might not find that no contract existed because the parties never had a meeting of the minds. However, the jury might also find that there was a contract, and the instant dispute is the result of one party's unwillingness to acknowledge the correct terms agreed upon rather than that party's "mistake."

[3]Watt's deposition was taken on January 31, 2009.

disclosures on August 8, 2008. Docket 14. Thereafter, there was relatively little action taken by either party until February 9, 2009, the date Juergens filed the Second Amended Complaint.[4] Docket 18. The parties have provided no explanation for why Watt's deposition was taken outside the discovery deadline or why discovery was not done earlier in this case so that they could determine the facts known to the parties. Juergens waited until two weeks after the close of discovery to file this motion to amend the complaint. Here, there is no question that Juergens unduly delayed the request to amend. The parties have been litigating this case for over a year and have been engaged in the debt collection process for almost two years. Although Juergens did move to amend before the trial, and therefore not at the latest time conceivable under the rules, she offers no justifiable reason why the motion could not have been made earlier. To allow an amendment at this stage and over Watt's objections would likely necessitate continuing the trial, re-opening discovery, and expending judicial resources as well as litigation costs to the parties. The plaintiffs' motion to amend the complaint is denied.

Motion for Summary Judgment

On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the non-moving party's case"). Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to a party's case and on which that party will bear the burden of proof at trial."

---

[4] All docket entries between August 8, 2008 and February 9, 2009 were actions by the court.

14

*Celotex Corp.*, 477 U.S. at 322. Before finding that no genuine issue of material fact exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324. That burden is not discharged by "mere allegations or denials." Fed. R. Civ. P. 56(e). All legitimate factual inferences must be made in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is only appropriate where the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c).

Juergens alleges that Watt, through unauthorized use of the plans, engaged in 130 acts of copyright infringement. She also seeks damages from Watt for abuse of process under Mississippi state law in Watt's filing the related action in Lafayette County Chancery Court. In her motion to amend to conform to the pleadings and related responses, Juergens agreed to withdraw her state law claims (via her proposed third amended complaint) and proceed with her other claims. Because it is not clear whether, in light of the court's denial of the plaintiff's motion to amend to conform to the evidence and responsive pleadings, Juergens would still withdraw her claims, the court will address all claims made in the First Amended Complaint.

*Copyright infringement*

To establish a prima facie case of copyright infringement, a copyright owner must prove

15

"(1) ownership of a valid copyright, and (2) copying [by the defendant] of constituent elements of the work that are original." *General Universal Systems, Inc. v. Lee* 379 F.3d 131, 141 (5th Cir. 2004); *see* 17 U.S.C. § 411(a). To establish "ownership" of the material Juergens must show that the material is original, the material can be copyrighted, and she has complied with all statutory formalities. *Lakedreams v. Taylor,* 932 F.2d 1103, 1107 (5th Cir.1991). The owner of the copyright must have registered it to maintain a copyright infringement claim. *Geoscan, Inc. of Texas v. Geotrace Technologies, Inc.*, 226 F.3d 387, 392 -393 (5th Cir. 2000). It is not necessary to prove possession of a registration certificate to maintain a claim; proof of payment of the required fee, deposit of the work in question, and receipt by the Copyright Office of a registration application will suffice. *Apple Barrel Productions, Inc. v. Beard*, 730 F.2d 384, 386 -387 (5th Cir.1984), citing *2 Nimmer on Copyright* § 7.16[B][1]. A certificate of registration, if timely obtained, is prima facie evidence both that a copyright is valid and that the registrant owns the copyright. *General Universal Systems, Inc.,* 379 F.3d at 141.

In this case, Juergens testified that at the time she delivered the plans to Watt, they were stamped "copyright pending." Docket 25-4, p.9. As of that date, March 16, 2007, Juergens admits that she had not mailed the copyright application to the copyright office, *id.*, but the Certificate of Registration was issued by the copyright office on March 27, 2007 [ Docket 1, pp. 5-6], apparently before Watt began construction of the building.

Watt asserts that he is entitled to summary judgment because Juergens granted an implied, non-exclusive license to use the plans fro the construction of the condominiums. A license is a defense to a claim of copyright infringement. *Oddo v. Ries,* 743 F.2d 630, 634 n. 6 (9th Cir.1984). Although exclusive licenses must be in writing, a nonexclusive license may be

granted orally, or may even be implied from conduct. *Keane Dealer Services, Inc. v. Harts* 968 F.Supp. 944, 947 (S.D.N.Y.,1997), cited with approval in *Carson v.Dynegy, Inc.,* 344 F.3d at 452, fn 6. In fact, consent given in the form of mere permission or lack of objection is also equivalent to a nonexclusive license and is not required to be in writing. *Lulirama Ltd., Inc. v. Axcess Broadcast Services, Inc.,* 128 F.3d 872, 879 (5th Cir.1997). The Fifth Circuit held in *Campbell v. Smythe* , 2001 WL 1131783, 1 (5th Cir. 2001), that an implied nonexclusive license arises when:

> (1) the licensee requests the creation of a work,
> (2) the creator or the licensor makes the particular work and delivers it to the licensee who requested it, and
> (3) the licensor intends that the licensee-requestor copy and distribute his work.

*Id.* at *1, quoting *I.A.E., Inc. v. Shaver,* 74 F.3d 768, 776 (7th Cir.1996).

In this case, Watt requested that Juergens create plans for three condominiums. Juergens created those plans and delivered multiple sets to Watt with the intent that they be used by contractors and subcontractors for construction of the condominiums. Juergens admits that the plans were delivered to Watt with no restrictions placed on them other than her expectation of being paid and the notation of "copyright pending." Docket 25-4, pp. 8-9. Watt paid plaintiff's initial bill in the amount of $1,218.75 promptly. He attempted to pay what he claims was the balance due on the contracted amount, but Juergens refused payment because it was less than she contended she was owed under the contract. Juergens presents no evidence to the contrary, but rather argues that there was no contract because the parties did not agree on the price. Simply arguing the nonexistence of a contract under Mississippi law is not sufficient to preclude summary judgment in this case. *See Carson v. Dynegy, Inc.,* 344 F.3d at 452 n. 5, *citing*

*Lulirama Ltd., Inc.* 128 F.3d at 879 (5th Cir.1997).

The *Lulirama* court held that a "nonexclusive license may be irrevocable if supported by consideration. This is so because a non-exclusive license supported by consideration is a contract." *Lulirama, Ltd., Inc.* at 882. Under general principles of contract law, consideration, as payment for services, creates a valid obligation. The same is true under the implied-in-fact license. *Fantastic Fakes, Inc. v. Pickwick International, Inc.* 661 F.2d 479, 484 (5th Cir. 1981). The fallacy of Juergens's argument that there is no contract because there was no agreement as to the price for her services likewise would apply to negate a claim there can be no license because the full contract price was not paid. Breach of a contract provision may support a claim for damages under contract law but will not disturb the remaining rights and obligations under the license, including the authority to use the copyrighted material. *Fantastic Fakes, Inc. v. Pickwick Internnational, Inc.* 661 F.2d at 484-485, citing 3A Corbin on Contracts §§ 633, 635 (1960).

The evidence establishes that Watt, the licensee, requested the creation of a work – the plans for three condominiums. Juergens, the creator or the licensor, drew the plans and delivered them to Watt as requested, including multiple copies for use by Watt's contractor and subcontractors. Juergens's testimony establishes that she intended that Watt use the copies to construct the condominiums. Finally, Watt paid Jeurgens $1218.75. Given the undisputed facts, the court holds that Juergens granted Watt an implied, nonexclusive license for use of the plans to build the condominiums. That license, in light of the consideration paid by Watt, was irrevocable. As the existence of a license authorizing the use of copyrighted material is an affirmative defense to an allegation of copyright infringement, the court holds that the plaintiffs' claims of copyright infringement are denied.

*State Law Claims*

Due to plaintiff's attempt to amend her complaint, the facts in this case are more clearly defined. Unfortunately, the claims are not. In the proposed Third Amended Complaint Juergens withdrew all state law claims. However, in her response to Watt's motion for summary judgment she noted that "the Rules of Federal Procedure require the Court to approve an amendment to a pleading before the amendment is effected. While plaintiff has offered to amend her complaint as suggested [to withdraw her state law claims] her amendment has not yet been permitted." Docket 30, p. 6. In the same response Juergens indicates that she has made a claim for breach of contract against Watt, yet her First Amended Complaint alleges no such claim. Instead, she makes a claim for payment of a debt and possibly one for abuse of process. Regardless, having dismissed the claims over which it has original jurisdiction, the court declines to exercise supplemental jurisdiction over the plaintiff's state law claims, *see* 28 U.S.C. § 1367, and will dismiss the plaintiff's state law claims without prejudice.

## CONCLUSION

For these reasons, the court holds that the plaintiff's motion to amend her complaint to conform to the evidence is DENIED, and the defendant's motion for summary judgment is GRANTED as to plaintiff's claims of copyright infringement. Plaintiff's supplemental state law claims are dismissed without prejudice.

A Final Judgment will issue in accordance with this Order.

SO ORDERED, this, the 15th day of May, 2009.

                                                                        /S/ S. ALLAN ALEXANDER
                                                                       UNITED STATES MAGISTRATE JUDGE